Taylor, C. J.
If the loss of this property were occasioned by such an accident as came fairly within the scope of the exception contained in the bill of lading or receipt, then the defendant ought not to be responsible. Otherwise he must be chargeable upon every principle applicable to the duty of common carriers.
The expressions of that paper are “ dangers of the river only excepted,” and they signify the natural accidents incident to that navigation; not such as might have been avoided by the exercise of that discretion and foresight, which are expected from persons in such employment.
*226 Nor indeed is every loss, proceeding even from a natural cause, to be considered as happening by a peril of the sea; for if a ship perish in consequence of striking against a rock or shallow, the circumstances, under which the event takes place, must be considered, in order to decide whether it happened by a peril of the sea or by the fault of the master. If the situation of the rock or shallow is generally known, and the ship not forced upon it by adverse winds or tempest, the loss is to be imputed to the fault of the mastera; or if the shallow were occasioned by a sudden and recent collection of sand in a place, where ships could before sail in safety; the loss is to be attributed to the act of God, or the perils of the sea.b
Apply this principle to the case before us, and consider whether the circumstances under which the loss happened do not announce a degree of carelessness or temerity in the Skipper, that ought to render him responsible to the Plaintiff.
The force of the current in the time of a fresh, and the increased danger, thence arising from the cypress tree, were well known to the Skipper. He should not have adventured to pass the bend at such a time, without employing adequate precautions to obviate the danger, if indeed any precaution could have been sufficient. But on prosecuting that part of the voyage at such an unseasonable time, he took the risque upon himself. The state of the river, it is true, was equally known to the Plaintiff, but he neither knew the consequent hazard connected with this part of it, nor does it appear that he urged the departure of the Skipper in the face of such danger.
Here, then, was no tempest, no irresistable impulse of natural causes, but a fixed and well known danger which every man accustomed to the navigation would calculate upon *227 meeting, if he proceeded on the voyage at such a time, with only the usual number of hands. And even these, it appears, were all employed at the bow of the boat, whilst none were left in the stern to counteract the tendency of the current to force that part under the tree. Thus, in the case of Amis v. Stephens,ª where the plaintiffs put goods on board the defendant’s hoy, which sunk in consequence of a sudden gust of wind as she came through a bridge, the court held the defendant not liable, as the accident was occasioned by the act of God; but they said, if the defendant had ventured to shoot the bridge, if the general bent of the weather had been tempestuous, he would have been liable.—The court thinks, upon the whole case, there ought to be a new trial.

 Abbot 169.

 Abbot Ibid.